UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 15 2003
JUDGE MATTHEW F. KENNELLY
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| vs. | ) | No. 02 CR 576-6 |
| KAY ELLIOTT | ) | Hon. Matthew F. Kennelly |

DOCKETED APR 21 2003

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, KAY ELLIOTT, and her attorney, JAMES COUCH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) as set forth below in Paragraph 18.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 02 CR 576-6.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, KAY ELLIOTT, and her attorney, JAMES COUCH, have agreed upon the following:

1. Defendant acknowledges that she has been charged with mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2 (Counts Two and Three).

112

2. Defendant has read the charges against her contained in the First Superseding Indictment, and those charges have been fully explained to her by her attorney.

3. Defendant fully understands the nature and elements of the crimes with which she has been charged.

4. Defendant will enter a voluntary plea of guilty to Count Two of the First Superseding Indictment in this case.

5. Defendant will plead guilty because she is in fact guilty of the charge contained in Count Two of the First Superseding Indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

Beginning no later than in or about June 1996 and continuing to at least in or about March 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant KAY ELLIOTT ("ELLIOTT"), along with co-defendants Sherman F. Jaffe ("Jaffe"), Theresa L. Holt ("Holt"), Brian J. Wilkozek ("Wilkozek"), Shah Siddiqui ("Siddiqui"), Neeraj Mody ("Mody"), Jacquelynne Watson, ("Watson"), Thomas G. Hozier ("Hozier"), Mary R. Volpe ("Volpe"), John Simmons ("Simmons"), Weddie Jackson ("Jackson"), Ellen Berry ("Berry"), Leonard L. Moore ("Moore"), Dante Samson ("Samson") and Glenda Garcia ("Garcia"), participated in a scheme to defraud and to obtain money and property, namely, mortgage loans from various lenders, by means of materially false and fraudulent pretenses, representations, promises and material omissions and for the purpose of executing the scheme and attempting to do so, knowingly caused certain matters to be delivered by United Parcel Service in violation of Title 18, United States Code, Sections 1341 and 2.

Specifically, beginning in or about June 1996, co-defendant Holt through her company, Share Development, devised a scheme in which co-defendant Holt and her real estate company Share Development agreed to sell properties (the "Properties") she would purchase for $25,000 from Jay Goran under an agreement she entered into with Jay Goran (the "Goran Agreement"). After having entered into the Goran Agreement, co-defendant Holt recruited defendant ELLIOTT and co-defendants Watson, Hozier, Volpe, Simmons, Samson, Jackson, Moore, Berry and Jaffe (the "purchasers") to purchase the properties from co-defendant Holt and Share Development.

In or around January 1997 and thereafter, co-defendant Holt recruited defendant ELLIOTT and other co-defendant purchasers to purchase properties by representing to them that they could purchase the properties "with no money down" and receive cash back at closing. Co-defendant Holt told defendant ELLIOTT that she could buy as many properties as she could "with no money down" and receive approximately $4,000 for each property purchased for the first ten (10) properties and $3,000 for each property purchased thereafter. The $3,000 or $4,000 was paid to defendant ELLIOTT after closing.

Defendant ELLIOTT was told by co-defendant Holt that she (Holt) would give defendant ELLIOTT "seller carry back" loans for each property purchased, which "seller carry back" loan would obviate the need for defendant ELLIOTT to provide any money as a down payment. The "seller carry back" loans would then be applied toward the "down payment" on the fraudulent purchases of the properties. Defendant ELLIOTT knew that the "seller carry back" loans were only a "formality" to facilitate lender approval of the transactions and further knew that co-defendant Holt had no intention of ever enforcing the repayment terms included in these loans.

After closing, co-defendant Holt paid the defendant ELLIOTT either $3,000 or $4,000 for each property they purchased, which monies were never disclosed in any of the closing papers. Co-defendant Holt profited from the difference between the inflated second purchase price and first purchase price, that is, the "spread," less co-defendant Holt's "cost" of selling the properties. The "spread" proceeds were then used to, among other things, compensate defendant ELLIOTT who participated in the fraudulent purchase and to compensate the defendant loan processors and defendant loan officer, among others.

Between February 4, 1997, and October 10, 1997, defendant ELLIOTT agreed to fraudulently purchase and fraudulently caused lenders to issue mortgage loans on approximately 27 Chicago area properties in an amount of approximately $1,329,900, which loans would not otherwise have been issued. The properties fraudulently purchased by defendant ELLIOTT were the following:

1) 6202 S. May
2) 6839 S. Peoria
3) 539 W. 66th St.
4) 543 W. 66th St.
5) 6654 S. Ross
6) 7209 S. Sangamon
7) 423 W. 98th St.
8) 7316 S. Woodlawn
9) 619 E. 92nd Place
10) 9239 S. Drexel
11) 6427 S. Parnell
12) 5954 S. Sangamon
13) 5715 S. Aberdeen
14) 7740 S. Lowe
15) 6042 S. Justine
16) 7122 S. Green
17) 7048 S. Woodlawn
18) 1304 E. 93rd St.
19) 6045 S. Carpenter
20) 6448 S. Hoyne
21) 6711 S. Normal
22) 6753 S. Union

4

23) 839 W. 54th St.
24) 7716 S. Eggleston
25) 514 W. 66th St.
26) 7005 S. Throop
27) 5800 S. May

ELLIOTT purchased multiple properties on the same day, including two properties July 21, 1997, three properties on August 29, 1997, and five properties on September 8, 1997, and two properties on October 10, 1997.

At each closing for each of the properties purchased, defendant ELLIOTT signed Uniform Residential Loan Applications ("URLA") in which she falsely represented that, among other things, she had disclosed all the real estate she owned, and that the money from "buyer" was in fact her money, when, as she well knew, said money had been given to her by co-defendant Holt. After defendant ELLIOTT fraudulently purchased the properties, defendant ELLIOTT received either $3,000 or $4,000 from co-defendant Holt after closing.

Defendant ELLIOTT allowed many of the properties to proceed to foreclosure. As a result of allowing the properties to proceed to foreclosure, certain of the properties were sold by third party mortgage lenders at foreclosure sales. Certain of the properties were then repurchased at foreclosure for amounts less than the originally financed amount. The third party mortgage lenders sustained an aggregate loss of approximately $867,099 as a result of defendant ELLIOTT's fraudulent purchase of 27 properties.

On or about September 10, 1997, in the Northern District of Illinois, Eastern Division, defendant ELLIOTT, for the purpose of executing the above-described scheme and attempting to do so, knowingly deposited and caused to be deposited a matter to be sent and delivered by United Parcel Service, a private and commercial interstate carrier, namely, a package containing documents

pertaining to the real estate closing for the purchase of one of the Goran Properties, located at 1304 E. 93rd Street, Chicago, Illinois 60619, addressed to JVS Financial, 2500 International Parkway, Woodridge, Illinois, 60517.

The preceding paragraphs are merely intended to provide a factual basis for the defendant ELLIOTT's plea of guilty. They are not intended to be a detailed statement summarizing everything that the defendant ELLIOTT knows about the matters and individuals referred to above.

6. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28 United States Code, Section 994, the parties agree on the following points:

(a) The November 1995 Edition of the Guidelines Manual applies to this case.

(b) The Guideline applicable to the offense is 2F1.1.

(c) Pursuant to Guidelines 2F1.1(a), the base offense level is 6.

(d) Pursuant to Guidelines 2F1.1(b)(1)(L), the base offense level is increased by 11 levels because the loss was more than $800,000 and less than $1,500,000.

(e) Pursuant to Guidelines 2F1.1(b)(2), the base offense level is increased by 2 levels because the offense involved more than minimal planning and was a scheme to defraud more than one victim.

(f) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for her actions, within the meaning of Guideline Section 3E1.1, a two-level reduction in the offense level is appropriate.

(g) Defendant has notified the government timely of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline Section 3E1.1(b); an additional one-point reduction in the offense level is therefore appropriate, provided the Court determines the offense level to be 16 or greater prior to the operation of Guideline Section 3E1.1(a).

(h) Based on the facts known to the government, the defendant's criminal history points equal 0 and the defendant's criminal history category is I; and

(i) The defendant and her attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Thus, defendant acknowledges that the validity of this agreement is not contingent upon the probation officer's or the Court's concurrence with any of the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw her plea on the basis of such corrections.

8. Defendant understands the count to which she will plead guilty carries a maximum penalty of five years' imprisonment, and a maximum fine of $250,000 or a fine of not more than the

7

greater of twice the gross gain or twice the gross loss, whichever is higher, and any restitution ordered by the Court. Defendant understands that the count also carries a term of supervised release of two to three years.

9. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on the count to which she has pled guilty, in addition to any other penalty imposed. The defendant understands that the government will request the Court to order the defendant to pay the special assessment of $100 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

10. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against her, she would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict her unless, after hearing

8

all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately.

(c)  If the trial is held by the judge without a jury, the judge would find the facts and determine, after shearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d)  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

(e)  At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

11.  Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraph. Defendant's attorneys have explained those rights to her, and the consequences of her waiver of those rights. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial and may only appeal the validity of this plea of guilty and the sentence.

12.  The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal any sentence imposed in accordance with paragraph 18 below

or the manner in which that sentence was determined on the grounds set forth in Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in the Plea Agreement.

13. Defendant understands that the indictment and the Plea Agreement are matters of public record and may be disclosed to any party.

14. Defendant agrees she will fully and truthfully cooperate with the government in any matter in which she is called upon to cooperate. Defendant further agrees to provide complete and truthful information in any investigation and pre-trial preparation, and complete and truthful testimony, if called upon to testify, before any federal grand jury and United States District Court proceeding, and any related civil administrative or court proceeding. Defendant also agrees to cooperate fully and truthfully in identifying assets subject to forfeiture, regardless where they may have been transferred or hidden.

15. Defendant also agrees to postpone her sentencing until after the conclusion of her cooperation with the government.

16. Defendant understands that the First Superseding Indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

17. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

18. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation, and, assuming the defendant's full and truthful cooperation,

shall move the Court, pursuant to Sentencing Guideline 5K1.1, to depart from the applicable sentencing guidelines range and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. However, this Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of sixty-six (66) percent of the low end of the applicable guideline range. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(e)(2) and (4). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

19. Regarding restitution, the parties acknowledge that the amount of restitution owed to third party mortgage lenders is at least $867,099 and that pursuant to Title 18, United States Code, Section 3663A the Court must order the defendant to make restitution in this amount, minus any credit for funds repaid prior to sentencing. The government agrees to name all third party mortgage lenders it has identified no later than one week prior to sentencing. The defendant understands that Title 18, United States Code, Section 3664 and Sections 5E1.1 and 5E1.2 of the Sentencing Guidelines set forth the factors to be weighed in setting a fine and in determining the schedule, if any, according to which restitution is to be paid in this case. The defendant agrees to provide full and truthful information to the court and United States Probation Officer regarding all details of her

11

economic circumstances in order to determine the proper restitution schedule according to which the defendant may be ordered to pay. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

20. Defendant understands that her compliance with each part of the Plea Agreement extends throughout and beyond the period of her sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. She further understands that in the event she violates the Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in the Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that the Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of the Agreement may be commenced against the defendant in accordance with the paragraph, notwithstanding the expiration of the statute of limitations between the signing of the Agreement and the commencement of such prosecutions.

21. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in the Agreement, to cause defendant to plead guilty.

22. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment as to this defendant and the original indictment in this case as to this defendant.

23. Defendant agrees the Plea Agreement shall be filed and become a part of the record in this case.

24. Defendant acknowledges that she has read the Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 4/15/03

_____
PATRICK J. FITZGERALD
United States Attorney

_____
KAY ELLIOTT
Defendant

_____
RICARDO MEZA
Assistant United States Attorney

_____
JAMES COUCH
Attorney for Defendant

_____
GABRIEL A. FUENTES
Assistant United States Attorney

14